2005 UT App 383

**Robert PEARSON dba Robert Pearson Construction, Plaintiff and Appellee,**

v.

**Suzanne J. LAMB, Defendant and Appellant.**

No. 20040613–CA.

Court of Appeals of Utah.

Sept. 9, 2005.

Rehearing Denied Oct. 19, 2005.

David B. Thompson, Miller Vance & Thompson PC, Park City, for Appellant.

David M. Bennion and Michael P. Petrogeorge, Parsons Behle & Latimer, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

OPINION (For Official Publication)

DAVIS, Judge:

¶ 1 Suzanne J. Lamb (Defendant) appeals the trial court's denial of her motion for a new trial, in which she argued that the failure of Robert Pearson (Plaintiff) to comply with Utah Code section 38–1–11(4)(a) divested the trial court of jurisdiction. *See* Utah Code Ann. § 38–1–11(4)(a) (2001). We affirm.

## BACKGROUND

¶ 2 In October 2002, Plaintiff filed a complaint seeking foreclosure of a mechanics' lien. Defendant filed her answer in December 2002 and an amended answer and counterclaim in February 2003; neither pleading contained allegations that Plaintiff failed to comply with the requirements of the Mechanics' Liens Act. On April 12, 2004, the parties filed stipulations of fact with the district court, stipulating that

> Mr. Pearson has complied with all the statutory procedural requirements for perfecting and foreclosing on a mechanics' lien ...; Mrs. Lamb does not defend against Mr. Pearson's mechanics' lien claim on these statutory procedural grounds, but simply challenges his right to receive payment of the amounts claimed in the lien.

A bench trial was held thereafter, and the district court entered a memorandum decision in favor of Plaintiff on April 20, 2004.

¶ 3 On May 26, 2004, Defendant filed a motion for reconsideration (which she now dubs a motion for a new trial), in which she argued that the trial court lacked jurisdiction to hear the foreclosure action because Plaintiff failed to comply with the requirements of section 38–1–11(4)(a) of the Mechanics' Liens

Act. The trial court, on June 16, 2004, issued a ruling and order denying Defendant's motion for a new trial, and on July 28, 2004, entered a Final Order and Judgment in favor of Plaintiff.

## ISSUE AND STANDARD OF REVIEW

¶ 4 The only issue before this court is whether Plaintiff's failure to comply with section 38–1–11(4)(a) of the Mechanics' Liens Act divested the trial court of jurisdiction to hear Plaintiff's mechanics' lien foreclosure action. If Plaintiff's failure to comply with section 38–1–11(4)(a) did not divest the trial court of jurisdiction, it is undisputed that Defendant waived that issue, not only by failing to assert it prior to trial but also by stipulation.

¶ 5 The determination of whether a court has subject matter jurisdiction is a question of law, which we review for correctness, according no deference to the trial court's determination. *See Beaver County v. Qwest, Inc.,* 2001 UT 81,¶ 8, 31 P.3d 1147. Questions of statutory interpretation are similarly questions of law that are reviewed "for correctness, giving no deference to the district court's interpretation." *Board of Educ. v. Sandy City Corp.,* 2004 UT 37,¶ 8, 94 P.3d 234.

## ANALYSIS

¶ 6 Under section 38–1–11(4)(a) of the Mechanics' Liens Act, lien claimants filing an action to enforce a lien must serve on the defendant-owner of a residence instructions relating to the owner's rights and a form affidavit along with the complaint. *See* Utah Code Ann. § 38–1–11(4)(a) (2001). Pursuant to section 38–1–11(4)(e), "[i]f a lien claimant fails to provide to the owner of the residence the instructions and form affidavit required by [s]ubsection 4(a), the lien claimant shall be barred from maintaining or enforcing the lien upon the residence." *Id.* § 38–1–11(4)(e). On appeal, Defendant argues that the language of section 38–1–11(4)(e) makes subsection 4(a) "mandatory," thereby making it a jurisdictional provision that cannot be waived and can be raised at any time. Defendant thus contends that Plaintiff's failure to comply with requirements of section 38–1–11(4)(a) deprived the trial court of jurisdiction to hear Plaintiff's lien foreclosure action.

¶ 7 Whether a procedure prescribed by statute is jurisdictional depends on whether the procedure is "mandatory" or "directory." *Beaver County v. Utah State Tax Comm'n,* 919 P.2d 547, 552 (Utah 1996). And while a procedure is generally considered "mandatory" when "consequences are attached to the failure to act," *Stahl v. Utah Transit Auth.,* 618 P.2d 480, 481 (Utah 1980), the purpose of the statute and the legislature's intent are of the utmost importance:

> There is no universal rule by which directory provisions may, under all circumstances, be distinguished from those which are mandatory. The intention of the legislature, however, should be controlling and no formalistic rule of grammar or word form should stand in the way of carrying out the legislative intent. . . . The statute should be construed according to its subject matter and the purpose for which it was enacted.

*Kennecott Copper Corp. v. Salt Lake County,* 575 P.2d 705, 706 (Utah 1978) (alterations in original) (quotations and citation omitted); *see also Stahl,* 618 P.2d at 482 ("A statute is, of course, to be construed in light of its intended purposes."). Therefore, "[a] designation is mandatory, and therefore jurisdictional, if it is 'of the essence of the thing to be done.'" *Beaver County v. Utah State Tax Comm'n,* 919 P.2d at 552 (quoting *Kennecott Copper Corp.,* 575 P.2d at 706) (other quotations and citations omitted); *see also Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.,* 798 P.2d 738, 744 (Utah 1990) ("We must determine whether the rigorous interpretations urged by [defendants] are necessary to protect the interests of the parties in the instant situation. Unless we find that [Plaintiff's] alleged failures have compromised a purpose of the mechanic[s'] lien statute, those failures will be viewed as technical . . . .").

¶ 8 The Mechanics' Liens Act was passed primarily to protect laborers who have added value to the property of another, but also to protect the property owner's right to convey clear title:

[T]he purpose of the mechanic[s'] lien act is remedial in nature and seeks to provide protection to laborers and materialmen who have added directly to the value of the property of another by their materials or labor. On the other hand, we recognize that liens create an encumbrance on property that deprives the owner of his ability to convey clear title and impairs his credit.... State legislatures and courts attempt to balance these competing interests through their mechanic[s'] lien statutes and judicial interpretations thereof.

*Projects Unlimited*, 798 P.2d at 743 (quotations and citations omitted); *see also Mickelsen v. Craigco, Inc.*, 767 P.2d 561, 563 (Utah 1989) ("[T]he mechanic[s'] lien law was enacted for the benefit of those who perform the labor and supply the materials....."). We must therefore balance a laborer's right to be paid for his labor and materials with the negative impact that liens have on an owner's credit and her ability to convey clear title. Plaintiff's failure to serve Defendant with instructions and a form affidavit is irrelevant to the lien's negative impact, whereas invalidating Plaintiff's right to be paid for his labor simply because he made a procedural error clearly contravenes the intended purpose of the Mechanics' Liens Act. Quite simply, the requirements of section 38–1–11(4)(a) have nothing to do with "the essence of the thing to be done," *Beaver County v. Utah State Tax Comm'n*, 919 P.2d at 552 (quotations and citations omitted), and Plaintiff's failure to comply therewith did not compromise a purpose of the Act.

¶ 9 Furthermore, the procedures set forth in section 38–1–11(4)(a) are not "mandatory" because no consequences attach to the failure to act. *See Stahl*, 618 P.2d at 481. The omission could have been remedied at any time during the course of the proceedings, or, had the trial court dismissed Plaintiff's mechanics' lien foreclosure action for failure to adhere to section 38–1–11(4)(a), the dismissal could have been easily addressed by either refiling or, depending on the timing, through Utah's savings statute. *See* Utah Code Ann. § 78–12–40 (2002). Under Utah's savings statute,

[i]f any action is commenced within due time and a judgment thereon for the plaintiff is reversed, or if the plaintiff fails in such action or upon a cause of action otherwise than upon the merits, . . . [the plaintiff] may commence a new action within one year after the reversal or failure.

*Id.*

¶ 10 Although Plaintiff may have failed to serve Defendant with the instructions and form affidavit required by section 38–1–11(4)(a), there is no question that he commenced his action within due time. "A civil action is commenced (1) by filing a complaint with the court, or (2) by service of a summons together with a copy of the complaint." Utah R. Civ. P. 3(a). And section 38–1–11(1) gives lien claimants twelve months after completion of the contract, or 180 days after the lien claimant last performed labor, to file suit. *See* Utah Code Ann. § 38–1–11(1). Here, Plaintiff performed labor at the residence throughout the spring of 2002 and filed his complaint seeking foreclosure in October 2002. Because Plaintiff's action was timely commenced and a dismissal for failure to adhere to section 38–1–11(4)(a) would have been a dismissal "otherwise than upon the merits," *id.* § 78–12–40, Plaintiff could have remedied his failure simply by commencing a new action within one year after the dismissal.

¶ 11 Unlike "mandatory" designations, "a designation is merely directory, and therefore not jurisdictional, if it is 'given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey no prejudice will occur to those whose rights are protected by the statute.'" *Beaver County v. Utah State Tax Comm'n*, 919 P.2d at 552 (quoting *Kennecott Copper Corp.*, 575 P.2d at 706) (other quotations and citations omitted); *see also Projects Unlimited*, 798 P.2d at 744–50 (upholding a lien despite its errors because such errors were technical and the defendant suffered no prejudice). Therefore, Utah courts have held that certain procedures required by statute are inconsequential to a court's jurisdiction. For example, in *Labelle v. McKay Dee Hospital Center*, 2004 UT 15, 89 P.3d 113, the court determined that a mailing

requirement of the Medical Malpractice Act was not jurisdictional, stating that construing the statute "in a manner to impose jurisdictional consequences on a claimant's every procedural stumble is to misapprehend the Medical Malpractice Act[ ]." *Id.* at ¶ 14. While the court "[did] not ignore the fact that the requirement . . . [was] mandatory," it stated that the mailing requirement was "a minor component of the Malpractice Act's prelitigation scheme. It serve[d] a wholly informational role, and it is difficult to envision how [defendants] could be prejudiced by being deprived of [the mailing]." *Id.* at ¶ 17. And in *Kiesel v. District Court,* 96 Utah 156, 84 P.2d 782 (1938), the court interpreted a statute requiring a plaintiff to file an undertaking, or bond, securing costs contemporaneously with the complaint. The court held that the statute, while affording no discretion to the court, still did not create a jurisdictional prerequisite:

> The language of [the statute], while positive and mandatory, when considered altogether makes the requirement only that the undertaking be filed contemporaneously with the complaint. This certainly is no stronger than the language of [other] statutes which require the bond to be filed before commencing action. But we think the legislature intended to make the requirement so positive and unequivocal as to require the court to dismiss the suit if the bond was not filed at least contemporaneously with the complaint *if [a] motion to dismiss was timely made.* Otherwise, the court could continue to take jurisdiction.

*Id.,* 84 P.2d at 784.[1]

¶ 12 Like the statute construed in *Kiesel,* the requirements of section 38–1–11(4)(a) are not conditions precedent to filing suit; they simply require action contemporaneous with the filing of the complaint. Furthermore, like the Medical Malpractice Act construed in *Labelle,* the Mechanics' Liens Act creates

numerous procedural hurdles to enforcing a lien. *See* Utah Code Ann. § 38–1–7 (2001) (delineating the contents of a notice of lien, and the time frame in which it must be filed); *id.* § 38–1–11(1), (2) (delineating the time frame in which suit and a lis pendens must be filed). Section 38–1–11(4)(a) of the Mechanics' Liens Act simply requires that certain instructions and a form affidavit be served on the defendant; these requirements are "wholly informational" and but "a minor component" of the Mechanics' Liens Act. *Labelle,* 2004 UT 15 at ¶ 17, 89 P.3d 113. Finally, like the defendants in *Labelle,* it is difficult to envision how Defendant here was prejudiced by being deprived of the instructions and form affidavit required by section 38–1–11(4)(a). Defendant has not alleged that she was prejudiced. In fact, she even stipulated that she was not defending against the lien foreclosure on statutory procedural grounds, but simply "challenge[d] his right to receive payment of the amounts claimed in the lien." Quite simply, the requirements of section 38–1–11(4)(a) are "directory, and therefore not jurisdictional," as they merely concern "the proper, orderly and prompt conduct of the business" and Defendant has suffered no prejudice. *Beaver County v. Utah State Tax Comm'n,* 919 P.2d 547, 552 (Utah 1996) (quotations and citation omitted).

¶ 13 Defendant cites numerous cases involving the Utah Governmental Immunity Act [UGIA], stating that the UGIA's notice requirement is comparable to the requirements of section 38–1–11(4)(a). Such an analogy is erroneous, as the UGIA's notice requirement has nothing whatsoever to do with service and mailing but instead provides that a claim against the state is barred unless notice thereof is filed with the state within one year after the cause of action arises. *See* Utah Code Ann. § 63–30d–402 (2004); *Stahl v. Utah Transit Auth.,* 618 P.2d 480, 481

---

1. Other jurisdictions have held that certain "mandatory" procedures are inconsequential to a court's jurisdiction. *See Hodusa Corp. v. Abray Constr. Co.,* 546 So.2d 1099, 1101 (Fla.Dist.Ct. App.1989) (interpreting a statute that required a contractor to provide a residence owner an affidavit prior to bringing suit, the court stated that "[a]lthough the furnishing of the affidavit is a condition precedent to bringing an action to foreclose a mechanic[s'] lien, failure to do so does not create a jurisdictional defect"); *Campbell v. Graham,* 144 Colo. 532, 357 P.2d 366, 368 (1960) (interpreting a statute that barred businesses that had not filed trade name affidavits from prosecuting suits, the court rejected the proposition that trade name filing is a jurisdictional prerequisite to filing a suit).

(Utah 1980). In this way, the UGIA's notice requirement is far more analogous to Utah Code section 38–1–11(1) and (2); which mandates that a mechanics' lien foreclosure action and a lis pendens must be filed within twelve months after completion of the contract or 180 days after the lien claimant last performed labor. *See* Utah Code Ann. § 38–1–11(1), (2). And like a party's failure to adhere to the UGIA's notice requirements, a party's failure to timely file a mechanics' lien foreclosure action and lis pendens is fatal and cannot be remedied:

> The penalty for not commencing an action to enforce a mechanic[s'] lien within the twelve-month period provided in section 38–1–11 is invalidation of the lien.... When a claimant fails to file the lis pendens within the twelve-month period, the lien itself is not invalidated, but rather it is rendered void as to everyone except those named in the action and those with actual knowledge of the action.

*Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 751 n. 13, 752 (Utah 1990). Utah courts have thus ruled that failure to timely commence a mechanics' lien foreclosure action and file a lis pendens, like failure to timely notify the state of a claim against it, divests the court of jurisdiction. *See, e.g., Interlake Distribs., Inc. v. Old Mill Towne*, 954 P.2d 1295, 1297–99 (Utah Ct.App.1998) (holding that liens were void because plaintiffs failed to file a lis pendens); *Diehl Lumber Transp. Inc. v. Mickelson*, 802 P.2d 739, 742 (Utah Ct.App. 1990) ("Failure to commence a timely mechanic[s'] lien foreclosure action divests the court of jurisdiction."); *AAA Fencing Co. v. Raintree Devel. & Energy Co.*, 714 P.2d 289, 290–91 (Utah 1986) (holding that an untimely mechanics' lien action is a jurisdictional issue and "forecloses [the parties'] rights").

¶ 14 Comparison between the requirements of section 38–1–11(4)(a) and the UGIA is misplaced also because Utah courts have specifically held that the UGIA is to be "strictly construed," *Great W. Cas. Co. v. Utah Dep't of Transp.*, 2001 UT App 54, ¶ 9, 21 P.3d 240, whereas "substantial compliance with the [Mechanics' Liens Act] is all that is required," *Chase v. Dawson*, 117 Utah 295,

215 P.2d 390, 390 (1950) (relating to the legal sufficiency of the notice of lien); *see also Projects Unlimited*, 798 P.2d at 743 ("Utah courts have recognized that substantial compliance with [the Mechanics' Liens Act's] provisions is all that is required."). "Although courts have differing opinions about how liberally to construe provisions within their mechanic[s'] lien statutes, the modern trend is to dispense with arbitrary rules which have no demonstrable value in a particular fact pattern." *Projects Unlimited*, 798 P.2d at 744 (quotations and citation omitted). Here, Plaintiff substantially complied with the Act, to such an extent that Defendant did not even notice Plaintiff's oversight until May 2004, more than eighteen months after the complaint was filed and more than one month after Defendant stipulated that Plaintiff had "complied with all the statutory procedural requirements for perfecting and foreclosing on a mechanics' lien." Furthermore, Defendant did not allege how the instructions and form affidavit required by section 38–1–11(a) would have conferred any demonstrable value here, but instead argued that such value (or lack thereof) was "irrelevant" and "of no import." Therefore, Plaintiff's failure to adhere to section 38–1–11(4)(a) did not divest the trial court of jurisdiction.

## CONCLUSION

¶ 15 Since Plaintiff's failure to adhere to section 38–1–11(4)(a) did not divest the trial court of jurisdiction, we affirm the trial court's Final Order and Judgment in favor of, and its award of reasonable attorney fees and costs below to, Plaintiff. *See* Utah Code Ann. § 38–1–18(1) (2001) (awarding reasonable attorney fees to the "successful party" in a mechanics' lien foreclosure action). Because "[t]he general rule is that when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal," *Utah Dep't of Soc. Servs. v. Adams*, 806 P.2d 1193, 1197 (Utah Ct.App.1991), we remand the matter to the district court for calculation of attorney fees reasonably incurred on appeal.

¶ 16 Affirmed and remanded.

¶ 17 I CONCUR:  GREGORY K. ORME, Judge.

¶ 18 I CONCUR IN THE RESULT: WILLIAM A. THORNE JR., Judge.